

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID VIKTOROVICH NIKOLAYEV,<br><br>Petitioner,<br><br>v.<br><br>KRISTI NOEM, et al.,<br><br>Respondents. | Case No.: 25cv3208-LL-BJW<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br><br>**[ECF No. 1]** |

Pending before the Court is Petitioner David Viktorovich Nikolayev's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1. The matter is fully briefed, and the Court deems it suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1. For the reasons below, the Court **GRANTS** the Petition for Writ of Habeas Corpus, **DENIES AS MOOT** the Motion for Temporary Restraining Order, and **ORDERS** Petitioner's immediate release from custody.

**I.    BACKGROUND**

Petitioner was born in the U.S.S.R., now known as Russia, and came to the United States with his family in the early 1990s when he was eight years old. ECF No. 1 ("Pet.") at 5. He and his family received green cards. *Id.* In 2016, he was convicted of disorderly conduct and resisting arrest. ECF No. 6-2. Then he was ordered removed by an immigration judge, spending several months in detention while ICE attempted to remove him. Pet. at 5.

When Russia failed to issue him a travel document, he was released on supervision in 2018. *Id*. He complied with all check-in appointments and did not commit any crimes for the next seven years. *Id*. He has also worn a GPS ankle monitor without incident. *Id*.

Still, on October 28, 2025, ICE arrested him at his regularly-scheduled supervisory appointment. *Id*. Petitioner swears that they did so without telling him "why [he] was re-detained" or "what changed to make it more likely that [he] can be deported to Russia," let alone a meaningful "chance to fight [his] re-detention." ECF No. 1 ("Nikolayev Decl.") ¶¶ 4–5. These failings, Petitioner argues, violated ICE's own regulations which state that:

> The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. . . . Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

*See* 8 C.F.R. §§ 241.13(i)(2)–(3), 241.4(l).

Therefore, on November 18, 2025, Petitioner sought his release though a writ of habeas corpus on three grounds: (1) that his detention is unlawful under *Zadvydas v. Davis*, 533 U.S. 678 (2001), and 8 U.S.C. § 1231; (2) that he was denied an explanation and chance to respond when he was re-detained, violating ICE's rules and his constitutional due process rights; and (3) that ICE may seek to remove him to a third country without notice and an opportunity to be heard. Pet. at 9–22. Petitioner moved for a temporary restraining order as well. ECF No. 2. The Court has since granted in part his requests, enjoining the Government from removing Petitioner to a third country. ECF No. 3. Finding the second claim (due process) to be dispositive, the Court declines to rule on the other claims.

## II. DISCUSSION

### A. Jurisdiction

Courts have long had jurisdiction to issue writs of habeas corpus to petitioners held in custody "in violation of the Constitution or laws or treaties of the United States."

1  28 U.S.C § 2241(c)(3). In doing so, we carry out the "historic purpose of the writ," namely
2  "to relieve detention by executive authorities without judicial trial." *Zadvydas*, 533 U.S. at
3  699. Had Petitioner sought to challenge the Government's decision to execute his removal
4  order, it would bar this Court's review. *See Arce v. United States*, 899 F.3d 796, 800
5  (9th Cir. 2018) (applying 8 U.S.C. § 1252(g)'s "jurisdiction-stripping power to actions
6  challenging the Attorney General's discretionary decisions to initiate proceedings,
7  adjudicate cases, and execute removal orders"). But Petitioner only contests his detention
8  resulting from violations of the Government's mandatory duties under certain statutes,
9  regulations, and the Constitution, so the Court has jurisdiction to determine the lawfulness
10 of his detention. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1,
11 19 (2020) (rejecting the government's "implausible" suggestion that § 1252(g) covers all
12 claims arising from deportation proceedings); *Hernandez v. Sessions*, 872 F.3d 976, 981
13 (9th Cir. 2017) ("[T]he government's discretion to incarcerate noncitizens is always
14 constrained by the requirements of due process.").

15  **B.   Due Process**

16  The Cout finds that the Government has violated its own regulations under
17 § 241.13(i) and § 241.4(l). First, ICE must determine that the detainee is significantly likely
18 to be removed in the reasonably foreseeable future "on account of changed circumstances."
19 § 241.13(i)(2). The Government asserts that it has assessed that changed circumstances
20 will result in Petitioner's removal to Russia in the reasonably foreseeable future. "While
21 that may [perhaps] be the case now, § 241.13(i)(2) requires that this determination is made
22 before the removable alien has had his release revoked." *Tran v. Noem*, No. 25-cv-2391-
23 BTM-BLM, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025). The record does not show
24 that a changed-circumstances determination was made at or before Petitioner's re-detention
25 on October 28, 2025. Even if ICE assessed the likelihood of Petitioner's removal before
26 revoking his release, it would not have been "on account of" changed circumstances. The
27 Government, in fact, did not even submit a request to Russia for travel documents until
28 November 5, 2025—more than a week after re-detaining Petitioner. With "no evidence of

an actual determination of changed circumstances that justified the initial revocation of [Petitioner's] release," the Government has violated its own rule under § 241.13(i)(2). *See id*. (finding the same).

Second, an alien must "be notified of the reasons for revocation of his or her release" that are actually "stated in the notification." § 241.13(i)(3); *see Tran*, 2025 WL 3005347, at *3 (holding that this "notice must be in writing and contain all the reasons for the revocation of the alien's release"). The Government's stance that "the regulations do not require written notice" is thus misguided. *See* ECF No. 6 ("Opp.") at 11. And for the materials that the Government did provide to Petitioner at or reasonably close to his arrest, the most specific reason given for his revocation was merely that "there are changed circumstances in your case." ECF No. 6-2 ("Notice") at 7. This is conclusory and does not satisfy due process. *See Tran*, 2025 WL 3005347, at *3 (finding the same); *Lesic v. LaRose*, No. 25-cv-2746-LL-BJW, 2025 WL 3158675, at *3 (S.D. Cal. Nov. 12, 2025) (same).

Finally, after re-detaining an alien who was out on supervision, ICE must "promptly" conduct "an initial informal interview" to "afford the alien an opportunity to respond to the reasons for revocation." § 241.13(i)(3). Although the Government may have interviewed Petitioner shortly after his arrest, Petitioner declares that they did not tell him "why [he] was re-detained" or "what changed to make it more likely that [he] can be deported to Russia," effectively stripping him of a meaningful "chance to fight [his] re-detention." Nikolayev Decl. ¶¶ 4–5. This failing, too, violated Petitioner's due process rights. *See Tran*, 2025 WL 3005347, at *3 (finding the same); *see also Grannis v. Ordean*, 234 U.S. 385, 394 (1914) ("The fundamental requisite of due process of law is the opportunity to be heard."); *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021) ("If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them.").

The Government does not seem to dispute that it has failed to follow all its own rules for re-detainment, instead arguing that "even assuming" the agency's compliance with the regulations fell short, it is not enough to release Petitioner back on supervision pending his

deportation to Russia in the reasonably foreseeable future. *See* Opp. at 13–14. However, courts "have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases). This is so even when, unlike here, the Government has obtained a petitioner's travel document back to his or her country of origin after their re-detainment. *See id*. at *1–6 (granting habeas and releasing the petitioner with a deportation order back on supervision when the respondents failed to comply with § 241.13(i) and § 241.4(l) despite later securing travel documents for his country of origin); *Tran*, 2025 WL 3005347, at *1–4 (same).

Because Respondents failed to comply with § 241.13(i) and § 241.4(l) when they revoked Petitioner's supervised release, issuing a writ to reinstate that release is warranted. This will be "without prejudice" to the remedies that Respondents may otherwise have, namely their readiness to deport Petitioner to Russia in the future. *See Tran*, 2025 WL 3005347, at *3. "Respondents may exercise their discretion to allow him to say goodbye to his family, settle his affairs, and report for his removal." *See id*.

### III. CONCLUSION

Accordingly, the Court **GRANTS** the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 and **DENIES AS MOOT** the Motion for Temporary Restraining Order. The Government shall immediately release Petitioner from custody on the October 28, 2025 revocation of release and arrest. Petitioner shall comply with all conditions that were in effect before his October 28, 2025 re-detainment. By **December 11, 2025**, at **3:00 p.m.**, the parties also must file a joint status report to confirm that Petitioner has been released, after which the Clerk will close this case.

**IT IS SO ORDERED.**

Dated: December 10, 2025

Honorable Linda Lopez
United States District Judge